[No. 17064.  *En Banc.*  March 18, 1922.]

THE STATE OF WASHINGTON, *on the Relation of Automobile Insurance Exchange, Plaintiff,* v. E. V. KUYKENDALL, *Director of Public Works, Respondent.*[1]

INSURANCE (1)—AUTHORITY TO DO BUSINESS—INDEMNITY INSURANCE. An "Automobile Insurance Exchange," having complied with Rem. Code, § 6059-85, for the organization of "interinsurers," brings itself within the definition (Id., 6059-2) of a "company" authorized to write insurance, and is such a company within Laws 1921, p. 341, § 5 [Rem. Comp. Stat., § 6391], requiring surety bonds from a company licensed to "make liability insurance," for all automobiles transporting passengers for hire. [See Rem. Comp. Stat., §§ 7033, 7130.]

SAME. Subdivision 13½ of Rem. Code, § 6059-83, having been added to the insurance code, expressly authorizing motor vehicle insurance against liability resulting through operation of the vehicle or transportation, the same falls within Laws 1921, p. 341, § 5 [Rem. Comp. Stat., § 6391], requiring jitney surety bonds from a company authorized to "make liability insurance," easily and radically differing from the class of subdivision 6, § 6059-83 [Rem. Comp. Stat., § 7128], covering employers' liability insurance.

[1]Reported in 205 Pac. 392.

JUDGMENT (214)—BAR—SCOPE OF ESTOPPEL.  The reversal of an order quashing an alternative writ of mandamus and consequent reinstatement of the writ becomes of no moment when the parties stipulate that the determination of a pending cause shall be conclusive in the prior one.

Application filed in the supreme court January 20, 1922, for a writ of mandamus to compel the director of public works to receive and file policies of insurance relating to the operation of motor vehicles.  Granted.

*Frank C. Owings* and *John B. Van Dyke,* for relator.

*The Attorney General* and *Raymond W. Clifford, Assistant,* for respondent.

*Troy & Sturdevant,* for intervener.

MACKINTOSH, J.—Mandamus is asked requiring the director of public works to receive and file policies of insurance issued by Automobile Insurance Exchange, in compliance with § 5, ch. 111, p. 341, Laws of 1921[1]. This action is supplemental to that reported in *State ex rel. Gillespie v. Kuykendall,* 117 Wash. 415, 201 Pac. 778, the relator in that action being the intervener in this, the controversy in both actions being primarily between that relator and the relator here, Automobile Insurance Exchange.  He was a former member of the exchange and is now seeking to prevent its writing insurance under the section above referred to, which reads as follows:

"The Commission shall in the granting of certificates to operate any auto transportation company, for transporting persons, and, or, property, for compensation require the owner or operator to first procure liability and property damage insurance from a company licensed to make liability insurance in the state of Washington or a surety bond of a company licensed to write surety bonds in the State of Washington on each

[1]NOTE: See Rem. Comp. Stat., § 6391.

motor propelled vehicle used or to be used in transporting persons, and, or, property, for compensation, in the amount of not to exceed $5,000.00 for any recovery for personal injury by one person and not less than $10-000.00 and in such additional amount as the commission shall determine, for all persons receiving personal injury by reason of one act of negligence and not to exceed $1,000.00 for damage to property of any person other than the assured, and maintain such liability and property damage insurance or surety bond in force on each motor propelled vehicle while so used, each policy for liability or property damage insurance or surety bond required herein, shall be filed with the commission and kept in full force and effect and failure so to do shall be cause for the revocation of the certificate.''

(1) It is claimed that the Automobile Insurance Exchange is not a ''company'' within the provisions of that section, which provides that insurance ''from a company'' shall be procured, etc.    The argument is that the exchange is not incorporated and has no charter, and that the section is confined to incorporated companies, and that the insurance code of this state requires all insurance to be made by incorporated companies.    On the contrary, however, the insurance code makes explicit provision for the writing of insurance by a concern such as the exchange.    In the first place, § 6059-2, Rem. Code (P. C. § 2909) [Rem. Comp. Stat., § 7033], provides:

''The terms 'Company,' 'Corporation,' or 'Insurance Company' or 'Insurance Corporation,' in this act, unless the context otherwise requires, includes all corporations, associations, partnerships, or individuals engaged as insurers in the business of insurance.''

If, under this definition, the exchange can be said to be a ''company,'' then it is a ''company'' within the meaning of Laws of 1921, p. 341, § 5 [Rem. Comp. Stat., § 6391].    The organization of the exchange is that known as ''inter-insurers,'' and the organization

of such concerns is provided for in the insurance code, for we find in § 6059-85 (P. C. § 2992) [Rem. Comp. Stat., § 7130], that:

"The following number of citizens of the United States, two-thirds of which number shall be residents of the state of Washington, may incorporate a company as follows: . . . for an organization of 'Inter-Insurers,' not less than twenty five; . . . by making and subscribing written articles of incorporation . . . which articles shall state: . . ."

Then enumerating the contents of the articles.

The record shows that these provisions have been complied with by the exchange. Section 6059-86, subd. 5 (P. C. § 2993) [Rem. Comp. Stat., § 7131], provides that no domestic mutual insurance company shall be authorized to do business until it shall have qualified as follows:

"If it is formed to transact business as inter-insurers only between the parties forming the company and all parties who shall become members and inter-insurers therein, no such company shall be formed nor transact any business as insurers until not less than twenty-five persons or parties, each of whom must be worth in his or its own right not less than twenty thousand dollars above all liabilities, in property located within this state, such fact to be determined by the commissioner, and in determining the same he may take the verified statement of such parties, and the signed reports of a reputable commercial agency having upward of one hundred thousand subscribers, which persons or parties shall first prescribe and adopt the terms and conditions upon which they will be governed and become inter-insurers each with the other, and each shall be individually liable with every other solvent member of such company to ratably pay and discharge all losses and legal claims accruing against such company: . . ."

The insurance code expressly providing for a concern such as the relator here, brings it within the defi-

nition given in § 6059-2, and therefore the exchange is such a "company" as is called for in § 5, ch. 111, p. 341, Laws of 1921.

(2)   The next complaint against the relator is that it is not authorized to write the kind of insurance provided for in § 5, ch. 111, p. 341, Laws of 1921.   The certificate issued to the relator by the insurance commissioner of the state which authorizes it to do business grants to that company the authority "to write insurance in the state of Washington, in classes named as follows:   Class 5, fidelity and surety insurance authorizing the issuance of motor vehicle bonds required by ch. 57, p. 227, Laws of 1915, and class 13½, motor vehicle insurance, all hazards (inter-insurance plan)." As far as the discussion of this question is concerned, the insurance code, in Rem. Code, § 6059-83 (P. C. § 2990) [Rem. Comp. Stat., § 7128], which classifies the different types of insurance, is as follows:

"(5)   Fidelity and surety insurance, being the guaranteeing of persons holding the places of public or private trust; guaranteeing the performance of contracts other than insurance policies; or guaranteeing and executing all bonds, undertakings and contracts of suretyship.

"(6)   Liability insurance, being all insurance against loss or damage resulting from accident to or injury, fatal or nonfatal, suffered by an employee or other person and for which the insurer is liable.  .  .

"(13½)   Motor vehicle insurance, being insurance on motor vehicles operated by power generated within or withon such vehicles, except those operating on water or on rails, against loss or damage or loss of use of or to the vehicle, furnishings, tools, appliances and equipment; or legal liability for loss or damage to persons or property resulting through the operation of the vehicle; caused by fire, self-ignition and explosion, theft, collision, or other insurable hazards, including all hazards incident to transporting such vehicle by land or by water."

The right of the relator to write surety insurance, which is one of the forms of insurance called for in § 5, ch. 111, p. 341, Laws of 1921, cannot be questioned under the authority given it by the insurance commissioner to write insurance under class (5) just noticed. The only question arises as to the extent of the authority under class $13\frac{1}{2}$. The insurance code, when it was originally passed in 1911, contained classes 5 and 6, but did not contain class $13\frac{1}{2}$, and the only provision for liability insurance was that provided in class 6. At that time the issuance of liability insurance, such as that provided for in ch. 111, Laws of 1921, was a class of business little known to the law, and the insurance code carried no provision for the writing of such insurance, and class 6 by its terms was principally applicable to liability arising between employer and employee. In 1913, the insurance code was amended so as to add classification $13\frac{1}{2}$, which expressly relates to motor vehicle insurance and recognizes a class of insurance easily and radically differing from that covered in class 6. It is the intervener's contention that because § 5 of ch. 111, p. 341, Laws of 1921, provides for the procuring of liability and property damage insurance from a company authorized to make "liability insurance", that the relator here, not being a company authorized to write liability insurance under class 6, is not empowered to write the insurance called for in § 5, ch. 111, p. 341, Laws of 1921 [Rem. Comp. Stat., § 6391].

If the intervener's argument is sound, strictly speaking, there could be no policy written under § 5 except surety bonds, for the companies authorized to write only under class 6 could not write the kind of insurance called for by § 5. Class $13\frac{1}{2}$, it will be noticed, expressly provides that companies writing motor vehicle insurance shall write "legal liability (insurance)

for loss or damage to persons or property, etc.,'' and a company authorized to do business under class 13½ would certainly be a company authorized to write liability and property damage insurance under a license to make liability insurance, falling within the exact words of § 5. It therefore must be held that a company authorized to write insurance under class 13½ is authorized to write the exact kind of liability insurance called for by § 5.

The fundamental error of the relator in this connection is that he assumes that the only form of liability insurance known to the insurance code is that which is provided for in class 6, whereas class 13½ provides for a special form of liability insurance by including it in motor vehicle insurance. The case of *Hadfield v. Lundin,* 98 Wash. 657, 168 Pac. 516, Ann. Cas. 1918C 942, is inappropriate, as that case merely decided that the requirement that a ''surety bond'' be given by jitney drivers was not satisfied by procuring a ''liability bond.'' So here, if § 5 called for nothing but the furnishing of surety bonds, the exchange would not be authorized to write insurance under class 13½, and the furnishing of a policy of that classification would not satisfy the requirement of a ''surety bond.''

(3)   The real reason why the director of public works has refused to accept the policies offered by the relator is not because he questions the right of the relator under its certificate of authority to write the policies called for in § 5, but that he fears that he has been enjoined from accepting such policies by the conditions existing in the former case of *State ex rel. Gillespie v. Kuykendall,* above. He has taken the position that, in that case, a temporary restraining order therein issued is still in effect and that he dare not violate its terms by receiving and filing these policies. In that action an alternative writ of prohibition was

issued restraining the director of public works from receiving and filing bonds issued by the exchange, or to show cause why he should not be permanently restrained. The director's demurrer to the petition was sustained by the lower court and the alternative writ was quashed. On appeal, this court reversed the action of the lower court and sent the cause back for hearing on the merits, holding that the demurrer had been improperly sustained. It is the director's position that this action reinstated the alternative writ of mandate and that he is in danger of being in contempt of court if he receives and files these policies offered by the relator here. This matter is of no concern now, in view of the fact that all parties interested have stipulated in this present action that the determination of this cause shall be conclusive of the prior one, and the disposition of this case, therefore, terminates all matters involved in the case of *State ex rel. Gillespie v. Kuykendall*.

For the reasons stated, the writ will issue.

PARKER, C. J., BRIDGES, MAIN, HOLCOMB, TOLMAN, MITCHELL, and HOVEY, JJ., concur.